UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE UNION CENTRAL LIFE, INSURANCE COMPANY | Case No. 1:10-cv-95 |
| Plaintiff, | Chief Judge Susan J. Dlott |
| vs. | |
| ANCHOR FINANCIAL SERVICES, LLC, *et al.*, | |
| Defendants. | |

**REPORT AND RECOMMENDATION[1] THAT DEFENDANTS'
MOTION TO TRANSFER VENUE (Doc. 6) BE DENIED**

This civil action is before the Court on the motion to transfer venue (Doc. 6) filed by Defendants Anchor Financial Services, LLC ("Anchor") and Nasir A. Mogul ("Mogul") and Plaintiff's memorandum in opposition (Doc. 9).

## I. FACTUAL BACKGROUND

On October 15, 2007, Plaintiff and Defendant Mogul entered into a written contract styled "Branch Manager Contract" ("BMC"), wherein Plaintiff agreed to employ Mogul for the purposes of operating a branch office agency of Plaintiff's in New York City ("Branch Office"). (Doc. 1, Ex. D). Effective the same day, Plaintiff and Defendant Anchor entered into a written contract styled "Broker Contract", wherein Plaintiff appointed Anchor its agent for the purposes of soliciting Plaintiff's insurance and annuity products ("Policies") in New York. (*Id.*, Ex. A).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Throughout the course of BMC and Broker Contract, Defendants carried on voluminous contacts with Plaintiff at its principal place of business located at Forest Park, Hamilton County, Ohio ("Home Office") including: (a) the submission of insurance policy applications to the Home Office using telephonic, written, and electronic communications; (b) communications with Plaintiff's Home Office employees via telephone, facsimile, and electronic mail to discuss the various aspects of carrying on Defendants' business, including the day-to-day operation of the Branch Office which, given the volume of Policies solicited, can be fairly estimated in the thousands; and (c) Defendants acceptance and presentation of drafts issued by Plaintiff from Ohio as compensation for the sale of Plaintiff's products. (Doc. 9, Ex. A at U 7). From the inception of BMC and Broker Contract in October 2007 through their termination in January 2010, Defendants solicited almost 440 life insurance and annuity contracts on Plaintiff's behalf generating revenue for Plaintiff, an Ohio citizen, of more than $4.7 million. (*Id.* at U 8, 9).

On October 17, 2007, Anchor executed a promissory note ("Note") in favor of Plaintiff in the principal amount of $252,000.00, the full satisfaction of which was guaranteed by Mogul. (Doc. 1 at Ex. B).

On April 21, 2009, Plaintiff and Mogul entered into the first of two compensation advance agreements ("Advance 1"), wherein Plaintiff advanced Mogul $150,000.00 in compensation earned under BMC. Advance 1 was memorialized by a Compensation Advance Repayment Agreement and Compensation Advance Agreement executed by

Plaintiff and Mogul. (Doc. 1, Ex. E, F and Ex. A at H 3).

On April 30, 2009, Plaintiff and Mogul entered into the second compensation advance agreement ("Advance 2"), wherein Plaintiff advanced Mogul an additional $80,000.00 in compensation under BMC. Like Advance 1, Advance 2 was memorialized by a Compensation Advance Repayment Agreement and Compensation Advance Agreement executed by Plaintiff and Mogul. (Doc. 1, Ex. G, H and Ex. A at 3).[2] The Advances both contained choice-of-law and forum selection clauses wherein Mogul agreed that the Advances would be governed by Ohio law and that he would be subject to the personal jurisdiction of Ohio courts in the event a dispute arose thereunder.

Specifically, the dual Compensation Advance Repayment Agreements state that they shall be "construed under the laws of the state of Ohio and the venue for any dispute arising herefrom shall be the courts of the state of Ohio. [Mogul] hereby submits to the personal jurisdiction of such courts for this purpose." (Doc. 1, Ex. E, G at § 6(d)). Similarly, the dual Compensation Advance Agreements state that they are "to be construed according to the laws of the State of Ohio. The venue for any dispute . . . shall be the courts of the State of Ohio and [Mogul hereby submits] to the personal jurisdiction of such courts for this purpose." (Doc. 1, Ex. F and H at 1-2).[3]

The Note contained a choice-of-law provision as well. It states that it "shall in all respects be governed by, and construed in accordance with the laws of the State of Ohio,

---

[2] Advance 1 and Advance 2 are collectively referred to hereinafter as "Advances."

[3] The above-referenced forum selection clauses are collectively referred to hereinafter as "Forum Clauses."

including all matters of construction, performance, validity and lawful interest rate."
(Doc. 1, Ex. B at 1). Additionally, the Note was negotiated between Defendants and
Plaintiff by way of telephone conferences between Ohio and New York. (Doc. 9, Ex. A
at 3). Upon its execution, Defendants sent the Note to Plaintiff in Ohio. As detailed in
the complaint, Defendants defaulted under the Note and the Advances. (Doc. 1 at 8-12,
17, 22). As a result, Plaintiff initiated this action, seeking damages for Defendants
respective breaches.

## II. STANDARD OF REVIEW

Section 1404 provides the standard for transfer of venue: "For the convenience of
parties and witnesses, in the interest of justice, a district court may transfer any civil
action to any other district or division where it might have been brought." 28 U.S.C. §
1404(a). The threshold issue under § 1404(a) is whether the action could be brought in
the transferee court. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio
2007). If a case could have been brought in the court "the issue becomes whether transfer
is justified under the balance of the language of § 1404(a)." *Id.* The moving party bears
the burden to establish a need for transfer. *Kay*, 494 F. Supp. 2d at 849-50 (citing
*Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)). The Court
must give Plaintiff's choice of forum considerable weight, although this factor is not
dispositive. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998).

Several factors influence the Court's § 1404(a) determination: "the private interests
of the parties, including their convenience and the convenience of potential witnesses, as

well as other public-interest concerns, such as systemic integrity and fairness." *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Exp. Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). Transfer pursuant to § 1404 must be "to a *more* convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) (emphasis added). When a party moves for change of venue based on inconvenience to witnesses or the burden of transporting documents, the party should provide specific evidence of inconvenience. *Pearle Vision, Inc. v. N.J. Eyes, Inc.*, No. 1:08-CV-190, 2009 U.S. Dist. LEXIS 281 at *8 (S.D. Ohio Jan. 6, 2009) ("Defendants have not identified their witnesses nor have they offered any evidence that their witnesses would be unable or unwilling to provide testimony at a trial in this District."); *AMF, Inc. v. Computer Automation, Inc.*, 532 F. Supp. 1335, 1340 (S.D. Ohio 1982) (holding that, under the circumstances of the case, "the location of documentary materials does not furnish justification for transfer").

### III. ANALYSIS

#### A. Forum Selection Clauses/Advances

Where parties to a contract have agreed to a certain venue via a forum selection clause, it "should control absent a strong showing that [they] should be set aside." *Wong v. PartyGaming*, 589 F.3d 821, 826 (6th Cir. 2009). The party opposing the forum selection clause is heavily burdened with showing that the clause should not be enforced. *Id.* Forum selection clauses are generally upheld where the opposing party fails "to offer

any evidence showing that it did not knowingly and willingly consent to the inclusion of the clause in the Agreement." *Preferred Capital, Inc. v. Assocs. of Urology*, 453 F.3d 718, 722 (6th Cir. 2006). A plaintiff's choice of forum is generally entitled to substantial weight, especially when a corporate plaintiff initiates the action in the district of its corporate headquarters. *Kay*, 494 F.2d at 850.

A court must consider the following factors when evaluating the enforceability of a forum selection clause: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the [moving party] to bring suit there would be unjust." *Wong*, 589 F.3d at 828 (citing *Sec. Watch, Inc. v. Sentinel Sys. Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)). Where the opposing party fails to produce any evidence that it was exploited or unfairly treated, the enforcement of a forum selection clause is not unreasonable. *Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994).

As the unequivocal terms of the four Forum Clauses make clear, Mogul agreed that the venue for any dispute arising under Advances would be an Ohio court. Defendants do not make any allegation, much less offer any evidence, that they unknowingly or unwillingly consented to the Forum Clauses.

On April 21, 2009, Mogul executed Advance 1 and, nine days later, executed Advance 2. As discussed *infra,* the Advances contain identical Forum Clauses. Assuming that Mogul read and understood the terms of Advance 1, he could not have

unknowingly or unwillingly executed Advance 2, since he had ample time to consider Advance 1 and its Forum Clauses before deciding to execute Advance 2. His execution of Advance 2 evidences his satisfaction with Advance 1, including its Forum Clauses, since the Forum Clauses in each are identical. If Mogul objected to the Forum Clauses contained in Advance 1, it is inconceivable that he would have executed Advance 2, an agreement containing identical Forum Clauses.

Even assuming Defendants passed the threshold inquiry that they did not knowingly and willingly consent to the inclusion of the clause in the agreement, which they do not, Defendants do not meet any prong of the three-part test outlined in *Wong*, necessary to elude the enforceability of a forum selection clause in the Sixth Circuit.

First, Defendants have not alleged nor offered proof that the Forum Clauses were obtained by fraud, duress, or other unconscionable means. The nine-day period between the execution of the respective Advances gave Mogul considerable time to reflect on Advance 1 and its Forum Clauses and object to Advance 2's Forum Clauses if he found them unsatisfactory. Mogul's execution of four Forum Clauses within a nine-day period forecloses the argument that they were agreed to unconscionably or while Mogul was under duress. Additionally, Mogul does not dispute that he received from Plaintiff the $230,000.00 promised to him under the Advances. Second, Defendants have not alleged or offered proof that the Court cannot effectively or fairly handle this suit. Third, Defendants have not alleged nor offered proof that they were exploited or unfairly treated in the negotiation or execution of the Forum Clauses. Therefore, Defendants fail the

*Wong* test and, accordingly, enforcement of the Forum Clauses are not unreasonable.[4]

**B.   Note**

Although the Note does not contain a forum selection clause, it still fails to meet the factors required in order to transfer venue. Defendants offer no proof that: (a) their proposed transferee court has subject matter jurisdiction over this matter; (b) venue is proper in their proposed transferee court; or (c) that Plaintiff is amendable to process issuing out of such transferee court. For this reason alone, Plaintiff's motion to transfer venue, as it relates to the Note, fails.

Assuming *arguendo,* however, that this initial inquiry is satisfied, Defendants do not meet their burden that a transfer is justified for convenience's sake and in the interest of justice. While Defendants note that at least one potential witness, Mogul, resides in New York, they make no reference to any other witnesses who would be inconvenienced by the present venue. Moreover, most of the Plaintiff's witnesses, and all Home Office employees, reside in this District.

Most relevant in balancing the interests of justice is *Kay*'s reliance on *Continental Grain Co., supra,* where the Court held that the avoidance of "a multiplicity of litigation" is critical to ensuring that the resolution of a matter is easy, expeditious, and inexpensive. Here, the Forum Clauses demand that this case, as it relates to the Advances, be heard in

---

[4] Additionally, Plaintiff argues that any claim that Defendants were fradulently induced or coerced is belied by Mogul's sophistication and business acumen. For more than two years, Mogul managed a staff consisting of hundreds of insurance agents and administrative professionals which solicited almost 440 Policies and generated almost $5 million in revenue, a portion of which was paid by Plaintiff to Mogul and his associates in compensation totaling in the hundreds of thousands of dollars.

this District. Thus, in order to avoid a separate lawsuit on the Note in New York, the Court should hear the Plaintiffs cause of action as to the Note as well.

Tilting the balance even more in favor of Plaintiffs choice of venue is the existence of the Note's Ohio choice-of-law provision. While the Note is silent as to venue, the choice-of-law provision shows that Plaintiff and Defendants considered Ohio as the forum for any dispute arising under Note.

Defendants have failed to meet their burden to establish a need for transfer. While a District Court in New York would be more convenient for Defendants, it would also be more inconvenient for Plaintiff. Transfer of venue is not appropriate when transfer "would only shift the inconvenience from one party to another." *Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008). Furthermore, Defendants have failed to assert that witnesses would be unable or unwilling to participate in Ohio, nor have Defendants demonstrated any significant hardship in the transportation of evidence to Ohio. With nothing more, the Court is unwilling to dishonor Plaintiff's choice of forum.

## IV. CONCLUSION

Accordingly, based on the foregoing, the undersigned **RECOMMENDS** that Defendants' motion to transfer venue (Doc. 6) be **DENIED**.

**IT IS SO ORDERED.**

Date: 5/21/10

s/ Timothy S. Black
Timothy S. Black
United States District Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE UNION CENTRAL LIFE, INSURANCE COMPANY | Case No. 1:10-cv-95 |
| Plaintiff, | Chief Judge Susan J. Dlott |
| | Magistrate Judge Timothy S. Black |
| vs. | |
| ANCHOR FINANCIAL SERVICES, LLC, *et al.*, | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).